1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT
8             SOUTHERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY, | Case No.: 24-cv-609-WQH-MMP |
| Plaintiff, | **ORDER** |
| v. | |
| DYE PRECISION, INC.; and DAVID DEHAAN, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Stay (ECF No. 17) filed by Defendants Dye Precision, Inc. and David DeHaan.

I.      **BACKGROUND**

A.      **The Underlying *Doe* Action**

The present declaratory judgment action arises from an underlying lawsuit currently pending in state court. On November 22, 2022, John Doe ("Doe"), suing under a fictitious name, filed a complaint in the Superior Court of the State of California, County of San Diego, Case No. 37-2022-00047300-CU-OE-CTL (the "*Doe* Action" or the "Underlying Lawsuit") against Defendant Dye Precision, Inc. ("Dye") and Defendant David DeHaan ("DeHaan") (collectively, "Defendants"). On October 27, 2023, Doe amended his

complaint (the "*Doe* Complaint").[1] The *Doe* Complaint asserts claims against both Dye and DeHaan for childhood sexual assault, battery, assault, false imprisonment, negligence, sexual harassment, and intentional infliction of emotional distress. (ECF No. 17-3, *Doe* Compl. ¶¶ 52–90, 103–07.) The *Doe* Complaint also asserts claims against Dye for failure to prevent sexual harassment and negligent supervision and retention. *Id.* ¶¶ 91–102.

The *Doe* Complaint alleges that DeHaan was Doe's stepfather "and lived in the same home as [Doe] from the time [Doe] was a few years old until he left for college at the age of eighteen." *Id.* ¶ 15. The *Doe* Complaint also alleges that during the time that the acts and events alleged in the *Doe* Action were occurring, "DeHaan was, and is, the CEO of Dye," a "multinational company." *Id.* ¶¶ 16–17. The *Doe* Complaint alleges that Doe also "intermittently worked at Dye during the events at issue and is currently employed at Dye." *Id.* ¶ 18.

The *Doe* Complaint alleges that "DeHaan began sexually grooming [Doe]" when Doe was fourteen years old and that "[t]he first instance of sex abuse by DeHaan occurred in late 2008 when [Doe] was fifteen years old." *Id.* ¶¶ 20, 26. The *Doe* Complaint alleges that DeHaan "sexually assaulted [Doe]" on several "Dye funded work trip[s]" and "Dye-sponsored trip[s]," including while Doe was "intoxicated on substances pushed on [him] by DeHaan." *Id.* ¶¶ 30, 32, 36. The *Doe* Complaint alleges that "[e]ven after leaving the family home, [Doe] was sexually assaulted by DeHaan on multiple occasions for another two years, including while on Dye work trips." *Id.* ¶ 38. The *Doe* Complaint alleges that "several other Dye employees" knew that "DeHaan had insisted on [Doe's] presence"

---

[1] Defendants request that the Court take judicial notice of the *Doe* Complaint as a document related to "proceedings in other courts that are directly related to the present case." (ECF No. 17-6 at 2 (citing *United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).) The Court may also take judicial notice of the *Doe* Complaint because it is a "document[] attached to the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)); *see* ECF No. 4-1. The Court accordingly grants Defendants' request and takes judicial notice of the *Doe* Complaint.

2

on a particular trip to Hong Kong where DeHaan "sexually assaulted [Doe] in a hotel room." *Id.*

The *Doe* Complaint alleges that "[d]uring this period of abuse, DeHaan regularly plied [Doe] with narcotics DeHaan illegally obtained from Asia and Mexico … to ensure [Doe] was heavily sedated and unable to resist the sex abuse." *Id.* ¶ 33. The *Doe* Complaint alleges that "[a]t DeHaan's direction, Dye employees received these illegal drug shipments at Dye headquarters, which were then turned over to DeHaan." *Id.* ¶ 34.

The *Doe* Complaint alleges that "[p]rior to and during the incidents at issue in this Complaint, Dye placed DeHaan in a position and location in which DeHaan would have close and unsupervised contact with minors, including [Doe]." *Id.* ¶ 44. The *Doe* Complaint alleges that "[e]ven after officers or directors of Dye became aware that the acts occurred, Dye did nothing to come to [Doe's] assistance or offer him aid or therapy." *Id.* ¶ 46. The *Doe* Complaint alleges that both Dye and DeHaan are liable for DeHaan's alleged conduct because, *inter alia*, "[a]t the time of the tortious acts engaged in by DeHaan, he was an agent and/or employee of Dye and the acts engaged in by DeHaan were engaged in at a time when DeHaan was within the course and scope of that agency and/or employment." *Id.* ¶¶ 54, 64, 71.

On November 28, 2023, DeHaan and Dye each filed an answer denying all allegations in the *Doe* Complaint. (*See* ECF No. 4-2; ECF No. 4-3.)

According to the San Diego Superior Court's Register of Actions, the *Doe* Action remains pending before the state court, with trial set for January 17, 2025. *See Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1007 (9th Cir. 2023) (recognizing that courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (quoting *Kipp v. Davis*, 971 F.3d 939, 945 n.2 (9th Cir. 2020))).

### B.   Great American's Insurance Policies

Plaintiff Great American E&S Insurance Company ("Great American") issued a series of commercial primary policies to Dye with effective dates spanning from July 6,

2011 to July 20, 2023. (ECF No. 4 ¶¶ 8, 42.) Great American also issued excess liability policies to Dye with effective dates spanning from July 6, 2013 to July 20, 2023. *Id.* ¶ 43.

On December 8, 2022, Defendants "tendered the Underlying Lawsuit to Great American for defense and indemnification." *Id.* ¶ 37. On February 8, 2023, "Great American sent a letter to Dye, agreeing to defend Dye subject to a complete reservation of rights, against the claims in the Underlying Lawsuit." *Id.* ¶ 40. In the same letter, "Great American denied all coverage for DeHaan." *Id.*

On March 28, 2024, "Great American sent an additional reservation of rights letter to Dye" in which it "continued to deny any obligation to defend or indemnify DeHaan." *Id.* ¶ 41. "Great American contends in the reservation of rights that it also has no duty to defend or indemnify Dye; however, it agreed to continue to defend Dye in the Underlying Lawsuit under a complete reservation of rights." *Id.*

## C.   The Present Declaratory Judgment Action

On March 29, 2024, Great American initiated the present declaratory judgment action by filing a Complaint (ECF No. 1) in this Court.[2] On April 5, 2024, Great American filed the First Amended Complaint ("FAC"), the operative complaint. (ECF No. 4, FAC.) Great American seeks declarations that: (1) DeHaan is not an insured under Great American's policies; (2) Great American has no duty to defend Dye or DeHaan; and (3) Great American's indemnity obligations to Dye and DeHaan are barred or limited based on certain provisions and exclusions in Great American's policies, as well as California Insurance Code § 533. (FAC ¶¶ 58–66.)

On June 24, 2024, Defendants filed the pending Motion to Stay. (ECF No. 17.) On July 22, 2024, Great American filed a Response in Opposition, wherein Great American

---

[2] Great American alleges that the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Great American is incorporated in the State of Ohio with its principal place of business in Ohio, Dye is incorporated in the State of California with its principal place of business in California, DeHaan is a citizen and resident of the State of California, and "the amount in controversy exceeds $75,000." (ECF No. 4 ¶¶ 2–5.)

proposed "a partial stay" of this action that would "allow Great American to litigate certain pivotal issues which can be decided as a matter of law." (ECF No. 20 at 4.) On July 29, 2024, Defendants filed a Reply in support of the Motion to Stay. (ECF No. 21.) In their Reply, Defendants rejected Great American's proposal of a partial stay and urged the Court to "stay this action in its entirety until final termination of the underlying *Doe* Action." *Id.* at 12.

## II. LEGAL STANDARD

A district court has broad discretion to stay proceedings pending before it "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A stay is "an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55 (citations omitted). Competing interests affected by the grant or denial of a stay are (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

When evaluating whether to stay a declaratory judgment action that arises from an insurance dispute and is related to pending state-court litigation, federal district courts in California often consider California courts' approach to assessing the potential prejudice to the insured.[3] *See, e.g.*, *Ohio Cas. Ins. Co.*, 2023 WL 9004947, at *5; *AIU Ins. Co. v. McKesson Corp.*, No. 20-cv-07469-JSC, 2021 WL 3565440, at *2 (N.D. Cal. Aug. 12, 2021); *MS Amlin Corp. Member, Ltd.*, 2020 WL 5966612, at *4. The California Supreme Court has explained that "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 301 (1993). The California Court of Appeal has also identified three ways in which an insured might be prejudiced by litigating a declaratory judgment action while the underlying lawsuit remains pending: (1) the insurer "join[s] forces with the plaintiffs in the underlying actions as a means to defeat coverage"; (2) "the insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers"; and (3) "the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not

---

[3] The parties appear to agree that the federal standard under *Landis* governs the Court's determination of whether to stay this action. Although Defendants rely in part upon California law (*see* ECF No. 17-1 at 15–18), Defendants also analyze the *Landis* factors and cite a case acknowledging that federal law ultimately governs the procedural question of issuing a stay in a diversity jurisdiction action. *See id.* at 24–25 (quoting *Ohio Cas. Ins. Co. v. Cal.-Pac. Ann. Conf. of the United Methodist Church*, No. 2:23-cv-02850-SB-MAR, 2023 WL 9004987, at *5 (C.D. Cal. Nov. 17, 2023)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that federal courts sitting in diversity jurisdiction apply federal procedural law and state substantive law). Great American similarly cites California cases throughout its discussion of the *Landis* factors. (*See generally* ECF No. 20.) The Court agrees that "there is overlap in the elements to satisfy both standards" and accordingly "considers the *Landis* factors which incorporates the [California] *Montrose* factor on the second prejudice factor." *MS Amlin Corp. Member, Ltd. v. Bottini*, No. 20cv687-GPC(LL), 2020 WL 5966612, at *4 (S.D. Cal. Oct. 8, 2020).

be used to its advantage." *Montrose Chem. Corp. v. Superior Ct.*, 25 Cal. App. 4th 902, 910 (Ct. App. 1994).

## III.   DISCUSSION

Defendants contend that the Court must stay this action because there are factual overlaps between this action and the *Doe* Action, such that "[l]itigating this coverage action before resolution of the *Doe* Action would force Defendants to take positions and litigate facts that could unfairly prejudice Defendants in the *Doe* Action." (ECF No. 17-1 at 18.) Defendants also contend that a stay is warranted because Great American's third cause of action, which seeks a declaration regarding its indemnity obligations to Dye and DeHaan, "is premature because the obligation to indemnify cannot be ascertained until the individual claims that are the bases for the finding of liability are determined." *Id.* at 30. Defendants accordingly request that the Court "stay this action in its entirety." (ECF No. 21 at 12.)

Great American responds that it is "amenable to a partial stay concerning those coverage issues which likely involve overlapping disputed factual issues in the Underlying Lawsuit." (ECF No. 20 at 4.) Great American identifies a set of discrete coverage issues that it contends "can be determined as a matter of law" and should accordingly be exempted from a partial stay. *Id.* at 4–5. Great American further contends that "[t]he issue of indemnity can be decided now as a matter of law" based on the same "limited coverage issues." *Id.* at 22.

### A.   Analysis of the *Landis* Factors

#### 1.   *Landis* Factor One: Damage to Great American from Granting a Stay

Defendants contend that staying this action will cause Great American "no cognizable damage" because incurring the costs of defending Dye in the *Doe* Action does not constitute damage to Great American that warrants a stay. (ECF No. 17-1 at 21.)

Great American contends that the prejudice that it would suffer from a full stay "far outweighs any prejudice" to Defendants because Great American "continues to incur significant defense fees and costs … in excess of $119,000" from defending Dye in the *Doe* Action. (ECF No. 20 at 18.) Great American also contends that a coverage

determination in this action would benefit Defendants, "in that a determination in Great American's favor may dispel any illusions on the part of the plaintiff in the Underlying Lawsuit that millions of dollars in insurance money is available to cover any judgment, which may produce more meaningful settlement negotiations." *Id.*

Courts regularly determine that "advancing defense costs is 'part of an insurer's obligation and costs of doing business'" and accordingly does not constitute harm that weighs against granting a stay. *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *5–6 (N.D. Cal. Feb. 12, 2019) (quoting *State Nat'l Ins. Co., Inc. v. US-SINO Inv., Inc.*, No. 5:13-cv-05240-EJD, 2015 WL 5590842, at *5 (N.D. Cal. Sept. 23, 2015)) (staying the declaratory judgment action and noting that the insurer would have the opportunity to recover the defense costs "after the underlying action is resolved"); *see also Sentinel Ins. Co., Ltd. v. Starritt*, No. 3:21-cv-788-CAB-BGS, 2021 WL 4034160, at *2 (S.D. Cal. Sept. 3, 2021) ("Courts in this circuit have concluded that delaying a determination of an insurer's coverage obligations does not constitute damage under the factors set forth in *Landis*." (quoting *Citizens Ins. Co. of Am. v. Chief Digit. Advisors*, No. 20-cv-1075-MMA (AGS), 2020 WL 8483913, at *2 (S.D. Cal. Dec. 22, 2020))).

Here, Great American contends that it will be harmed by a stay of this action only because it has incurred—and will continue to incur—significant costs from defending Dye in the Underlying Lawsuit. Great American does not assert, for instance, "that a stay threatens the preservation of any necessary evidence in this case or that it will be unable to recoup the advanced defense costs if it is ultimately determined not to have owed a defense in the underlying lawsuit[ ]." *Ohio Cas. Ins. Co.*, 2023 WL 9004987, at *5 (finding that the insurer failed to show that it would be "meaningfully harm[ed]" by a stay where it did not advance such arguments). Great American accordingly fails to demonstrate that it would suffer any meaningful harm from a stay of this action.

The Court finds the first *Landis* factor weighs in favor of a stay.

/ / /

/ / /

8

### 2. *Landis* **Factor Two: Harm to Defendants from Going Forward with Declaratory Relief**

Defendants contend that they would be prejudiced by continuing to litigate the present action while the *Doe* Action remains pending due to the "overlapping factual/legal issues coupled with the risk of inconsistent results" in the two actions. (ECF No. 17-1 at 24.) Defendants also contend that, without a stay of this action, they will suffer the prejudice of fighting "a two-front war" by simultaneously litigating the *Doe* Action and the present declaratory judgment action. *Id.* at 26.

Great American agrees that certain coverage issues identified by Defendants in their Motion "likely involve overlapping disputed factual issues in the Underlying Lawsuit." (ECF No. 20 at 4.) Great American states that it is "amenable to a partial stay" of those issues. *Id.* Great American contends, however, that the Court can determine the following coverage issues as a matter of law:

> 1) application of the Employers' Liability Exclusion; 2) application of the Pre-Existing Damage Exclusion; 3) whether Dye, as a corporation, may be found liable for claims of false imprisonment; 4) whether DeHaan qualifies as an insured under Great American's policies; and 5) in the event of a finding of "bodily injury" caused by an "occurrence," not otherwise barred by an exclusion, that the claims at issue in the Underlying Lawsuit allege only a single "occurrence" as defined in the policies.

*Id.* at 4–5. Great American contends that these discrete coverage issues should be exempted from a partial stay of this action because they "do[ ] not involve an adjudication of facts that overlap with factual disputes in the Underlying Lawsuit." *Id.* at 14. Great American further contends that, "[w]here there is no factual overlap between the declaratory relief action and the underlying action," a court must balance "the insured's interest in not fighting a two-front war against the insurer's interest in not being required to continue paying defense costs which it may not owe and likely will not be able to recoup." *Id.* at 18–19 (quoting *Great Am. Ins. Co. v. Superior Ct.*, 178 Cal. App. 4th 221, 237 (Ct. App. 2009)).

The Court addresses, in turn, the coverage issues that Great American contends this Court can determine prior to the resolution of the *Doe* Action.[4]

### i. Employer's Liability Exclusion

In relevant part, the "Employer's Liability" exclusion of Great American's policies[5] provides:

> This insurance does not apply to:
> * * *
>
> e.    Employer's Liability
>
> "Bodily injury" to:
>
> > (1) an "employee" of any insured arising out of and in the course of:
> >
> > > (a) employment by any insured; or
> > >
> > > (b) performing duties related to the conduct of the Insured's business; or
> >
> > (2) the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
>
> This exclusion applies: whether the Insured may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of the injury to liability assumed by any insured under an "insured contract."

---

[4] Because Great American concedes that the other exclusions and issues Defendants identify in their Motion "likely" contain factual overlaps with the underlying *Doe* Action, the Court declines to address them in this Order. (*See* ECF No. 20 at 4 ("Great American would have informed [Defendants'] counsel that it was amenable to a partial stay concerning those coverage issues which likely involve overlapping disputed factual issues in the Underlying Lawsuit."); *id.* at 12–13 ("[C]ounsel for Great American advised that Great American would agree to stay all issues except for the following, which Great American believes can be determined as a matter of law[.]").)

[5] Great American notes that "[t]he language of this exclusion varies slightly in the different policy years" but asserts that "the differences are not material for purposes of [its] brief." (ECF No. 20 at 9 n.1.)

(FAC ¶ 45.)

Great American contends that its "position as to coverage is based on the application of the relevant provisions of the Great American policies to the allegations of the Underlying Lawsuit, regardless of whether those allegations are ultimately proven by the underlying plaintiff." (ECF No. 20 at 14.) Great American contends that the Court can decide the applicability of the Employer's Liability exclusion as a matter of law because "[i]t applies whether the insured may be liable as an employer or in any other capacity." *Id.* at 15. Great American contends that because Doe alleges in the Underlying Lawsuit that he was employed by Dye and "employment status of the underlying plaintiff is the determinative factor for the Employer's Liability exclusion, application of this exclusion is independent of a determination of disputed facts in the Underlying Lawsuit." *Id.*

Defendants contend that, in order for Great American to establish that a policy exclusion applies to terminate its duty to defend, Great American "has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." (ECF No. 21 at 7 (quoting *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (Ct. App. 2002)).) Defendants contend that determining the applicability of the Employer's Liability exclusion "turns on facts at issue in the *Doe* Action." *Id.* at 8. Specifically, "Dye's position in the *Doe* Action is that [Doe] was not an employee or if he was, that any bodily injury to [Doe] did not arise out of and in the course of 1) his employment by Dye; or 2) while performing duties related to the conduct of Dye's business." *Id.*

In order to rely on an exclusion to deny coverage, an insurer must provide "*conclusive evidence* demonstrating that the exclusion applies." *FlorExpo LLC v. Travelers Prop. Cas. Co. of Am.*, 524 F. Supp. 3d 1051, 1056 (S.D. Cal. 2021) (quoting *Atl. Mut. Ins. Co.*, 100 Cal. 4th at 1039). "If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend." *Travelers Prop. Cas. Co. of Am. v. Allwire, Inc.*, 508 F. Supp. 3d 736, 742–43 (C.D. Cal. 2020) (quoting *Mirpad v. Cal. Ins. Guarantee Ass'n*, 132 Cal. App. 4th 1058, 1068 (Ct. App. 2005)).

Great American cites no authority to support its proposition that the applicability of an insurance policy exclusion may be determined merely by "[a]ssuming the facts alleged in the Underlying Lawsuit to be true[.]" (ECF No. 20 at 14.) Indeed, as Defendants note, "[a]n insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." *Atl. Mut. Ins. Co.*, 100 Cal. App. 4th at 1038–39; *see Black Mountain Ctr., L.P. v. Fid. & Deposit Co. of Md.*, No. 17cv1776 JM(JLB), 2018 WL 3584447, at *6 (S.D. Cal. July 26, 2018) (concluding that the insurer "fail[ed] to come forward with evidence to show that [the] exclusions apply under the circumstances" because "mere allegations taken from the second amended state court complaint fail to conclusively establish that these exclusions apply").

Here, the Court agrees with Defendants that determining the applicability of the Employer's Liability exclusion would require finding facts that overlap with factual disputes at issue in the *Doe* Action, such as whether Doe was an employee of Dye and whether his alleged "bodily injur[ies]" arose "out of and in the course of" his alleged employment by Dye or while "performing duties related to the conduct of [Dye's] business." (FAC ¶ 45.) The Court is skeptical that the applicability of this exclusion can be determined "as a matter of law" as Great American suggests, given that Great American bears the burden of producing "conclusive evidence" to establish the applicability of the exclusion. *Atl. Mut. Ins. Co.*, 100 Cal. App. 4th at 1038–39; *see Colony Ins. Co. v. Temescal REI, LLC*, No. 1:19-cv-01778-NONE-JLT, 2021 WL 535414, at *5–6 (E.D. Cal. Feb. 12, 2021) (holding that the applicability of a policy endorsement dependent upon the underlying plaintiff's status as an employee involved factual disputes at issue in the underlying action and accordingly favored a stay).

The Court finds that the Employer's Liability exclusion implicates factual disputes that overlap with the *Doe* Action. This exclusion accordingly does not warrant an exemption from a stay of this action.

/ / /

/ / /

### ii. Pre-Existing Damage Exclusion

In relevant part, the "Pre-Existing Damage" exclusion of Great American's policies[6] provides:

This insurance does not apply to:

1. Any loss or claim for damages related to "bodily injury" or "property damage" whether known or unknown:

   a. which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

   b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

2. Any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

We will have no duty to defend any Insured against any loss, claim, "suit["] or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

(FAC ¶ 45.)

Great American contends that the applicability of this exclusion can be determined "as a matter of law" because "the Underlying Lawsuit alleges that the sexual abuse began in July 2008," and "Great American's first policy incepted in 2011." (ECF No. 20 at 15.) Great American contends that, "[b]ased on the facts alleged in the Underlying Lawsuit, and the terms of the Great American policies, the Court can decide whether this exclusion applies independent of any factual determinations in the Underlying Lawsuit." *Id.*

---

[6] Great American notes that "[t]he language of this exclusion also varies slightly in the different policy years" but asserts that "the differences are not material for purposes of [its] brief." (ECF No. 20 at 10 n.2.)

Defendants contend that "[w]hether the Pre-Existing Damage exclusion applies requires conclusive proof, not disputed factual allegations, of the dates of each act of sexual abuse, the injury resulting from each act, whether each act is distinct, etc. because the Pre-Existing Damage exclusion does not apply if there were distinct acts of sexual abuse during Great America's policy periods." (ECF No. 21 at 8.) Defendants also assert that "[w]hile in the *Doe* Action Dye is trying to disprove [Doe's] allegations of sexual abuse and dates of said acts, in this Action Dye will have to take the opposite position that distinct acts of sexual abuse took place during Great American's policy periods." *Id.*

The Court again finds that the allegations of the *Doe* Complaint, without more, cannot constitute "conclusive evidence" of the applicability of an exclusion. *Atl. Mut. Ins. Co.*, 100 Cal. App. 4th at 1039. Litigating the applicability of this exclusion would also inherently implicate factual disputes at the heart of the *Doe* Action, as determining *when* the alleged acts of sexual abuse occurred necessarily involves establishing that the sexual abuse occurred in the first place—an allegation that Defendants contest in the *Doe* Action. Additionally, Defendants will "need to take conflicting positions" in the *Doe* Action and the present action regarding whether and when the alleged sexual abuse occurred—*i.e.*, attempting to disprove Doe's allegations in the Underlying Action while simultaneously attempting to establish in this action that the alleged sexual abuse occurred during a Great American policy period—which "could … cause prejudice absent a stay." *United Specialty Ins. Co. v. Bani Auto Grp., Inc.*, No. 18-cv-01649-BLF, 2018 WL 5291992, at *6 (N.D. Cal. Oct. 23, 2018).

The Court finds that the "Pre-Existing Damage" exclusion involves factual disputes that overlap with the *Doe* Action. This exclusion accordingly does not warrant an exemption from a stay of this action.

### iii. Whether Dye, as a Corporation, May be Liable for False Imprisonment

Doe asserts a claim of false imprisonment against both Dye and DeHaan in the Underlying Lawsuit. (*Doe* Compl. ¶¶ 74–79.) In particular, the *Doe* Complaint alleges that

"DeHaan deprived [Doe] of his freedom of movement by means of unreasonable duress, fraud and/or deceit," which "compelled Plaintiff to stay, for an appreciable period of time, in the rooms where he was sexually assaulted, including inside DeHaan's home and inside the hotel rooms where the sex abuse occurred during Dye work trips." *Id.* ¶¶ 75–76. The *Doe* Complaint alleges that "Dye's responsibility as DeHaan's employer when the acts occurred, and while acting on behalf of Dye, were a substantial factor in causing Plaintiff's harm." *Id.* ¶ 79.

Great American contends that the Court can determine as a matter of law that Dye, as a corporation, cannot be held vicariously liable for claims of false imprisonment. (*See* ECF No. 20 at 16.)

Defendants contend that this issue is not appropriate for the Court's consideration at this juncture because it "will turn on facts directly at issue in the *Doe* Action." (ECF No. 21 at 8–9.)

Doe's false imprisonment claim is one of nine claims that he asserts against Dye. At most, the Court's resolution of this issue would provide clarity for Great American as to its duty to defend Dye against only a single claim. However, "[i]f any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 797–98 (Cal. 1993)); *see Crosby Est. at Rancho Santa Fe Master Ass'n v. Ironshore Specialty Ins. Co.*, 578 F. Supp. 3d 1123, 1130 (S.D. Cal. 2022) ("The California Supreme Court has held that 'in a "mixed" action, in which some of the claims are at least potentially covered and the others are not,' the insurer 'has a duty to defend the action in its entirety.'" (quoting *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997))). Thus, this Court's ruling as to solely the false imprisonment claim would not extinguish Great American's duty to defend Dye in the *Doe* Action, rendering piecemeal consideration of this issue unproductive. The Court also observes that the state court will likely address this question of California law in resolving the *Doe* Action. This issue accordingly does not warrant an exemption from a stay of this action.

### iv. Whether DeHaan Qualifies as an Insured Under Great American's Policies

In relevant part, Great American's primary policies define "Who is An Insured" as follows: "Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors." (FAC ¶ 50.) The policies define an "executive officer" as "a person holding any of the officer positions created by [Dye's] charter, constitution, bylaws, or any other similar governing document." (ECF No. 20 at 11 n.3.)

Great American contends that the Court can determine as a matter of law whether DeHaan qualifies as an insured under its policies because the *Doe* Complaint "alleges purely intentional sexual abuse and conduct by DeHaan, none of which was undertaken with respect to his duties as an officer or director of Dye." (ECF No. 20 at 16.) Great American contends that because "any liability for the sexual assaults allegedly committed by DeHaan is clearly unrelated to his duties as a director or officer of Dye, the question of whether DeHaan qualifies as an insured under the Great American policies is not contingent on any facts to be determined in the Underlying Lawsuit." *Id.* at 16–17.

Defendants contend that Dye will be advancing conflicting arguments on this issue in the *Doe* Action and the case at bar. Specifically, "[t]o prove that DeHaan is an insured, Dye will take the position that DeHaan was an executive officer and that he was acting with respect to his duties as Dye's officer. In the *Doe* Action, however, Dye will be taking the opposite position." (ECF No. 21 at 9.) Defendants contend that determinations of "whether the *Doe* Action alleges purely intentional conduct and DeHaan's conduct as an officer" is dependent upon "facts at issue in the *Doe* Action and mandates a stay." *Id.* Defendants also contend that "[a]s Great American is not even defending DeHaan at this time, this is an issue that can be resolved at a later date, after the stay is lifted." *Id.*

Whether DeHaan was acting as an executive officer is a disputed issue in both the *Doe* Action and the present action. This overlap accordingly weighs against exempting this issue from a stay.

Moreover, courts are less likely to find that an insurer will suffer prejudice from a stay of a declaratory judgment action where the insurer is not defending the insured in the underlying action. *See Atain Specialty Ins. Co. v. Zenisco, Inc.*, No. 19-cv-05198-HSG, 2020 WL 3640011, at *3 (N.D. Cal. July 6, 2020) (determining that the insurer "[did] not point to any possibility of damage that may result from granting a stay" where it "ha[d] already denied coverage to Defendants based on its coverage determination, ha[d] rescinded the Policy, and [would] not incur expenses defending the underlying action until this case [was] resolved[.]"); *Gemini Ins. Co. v. Clever Constr., Inc.*, No. 09-00290 DAE-BMK, 2009 WL 3378593, at *10 (D. Haw. Oct. 21, 2009) (finding that the insurer would "suffer little prejudice" from a stay in part because it was "currently not defending [the alleged insured entity] … and, therefore, [was] expending no time or resources on such an effort"). Although Great American is defending Dye in the *Doe* Action subject to a complete reservation of rights, it has denied all coverage for DeHaan and is not expending any resources on his defense. Therefore, deferring the Court's consideration of this issue until after the resolution of the *Doe* Action is unlikely to prejudice Great American.

The Court finds that, at this juncture, the issue of whether DeHaan qualifies an insured does not merit exemption from a stay of this action.

### v.      The "Single 'Occurrence'" Argument

Great American contends that "the number of 'occurrences' is purely a legal issue unrelated to any determination of the facts in the Underlying Lawsuit." (ECF No. 20 at 17.) Great American contends that "California law is clear that in the event of multiple instances of sexual abuse of a victim, only a single 'occurrence' will be found." *Id.* (citing *State Farm Fire & Cas. Co. v. Elizabeth N.*, 9 Cal. App. 4th 1232, 1236 (1992)). Great American contends that, as a result, "any claims of 'bodily injury' alleged by [Doe] would be considered only a single 'occurrence,' triggering only a single policy." *Id.*

Defendants contend that, contrary to Great American's argument, "[w]hen adjudicating the number of occurrences in cases involving alleged sexual abuse, each 'distinct act' of abuse during a policy period may constitute a separate occurrence." (ECF

No. 21 at 9 (citing *Interstate Fire & Cas. Co. v. Archdiocese of Portland*, 35 F.3d 1325, 1330 (9th Cir. 1994)).) Defendants contend that, to defend against Great American's argument that the abuse alleged in the *Doe* Action constitutes a single "occurrence," "Dye will be forced to litigate, among other things: (1) whether the alleged abused [sic] occurred, (2) how often the alleged abuse occurred, (3) when the alleged abuse occurred[,] and [(]4) the nature and damages resulting from each distinct act of abuse." *Id.* Defendants contend that litigating such matters would result in "obvious prejudice to Dye" and that "the testimony and evidence required to adjudicate these occurrence questions overlap with issues to be resolved" in the *Doe* Action. *Id.* at 10.

The Court finds that the parties' dispute over the "occurrence" issue is not appropriate for resolution at this juncture. Great American presents this "single occurrence" issue as an "alternative" argument that would limit its coverage to "only a single policy" "if coverage is not completely barred." (ECF No. 20 at 17.) However, Great American advances multiple arguments—such as the applicability of the Employer's Liability exclusion and the Pre-Existing Damage exclusion—that, it contends, demonstrate that it owes no duty to defend or indemnify either Dye or DeHaan. At this juncture, the Court finds that it would be more efficient to consider all of Great American's arguments together, particularly if there is a possibility that an exclusion might completely exempt Dye and DeHaan from coverage, rather than merely limiting coverage to a single policy.

In sum, the Court concludes that the five coverage issues Great American proposes to exempt from a stay of this action are not appropriate for the Court's consideration at this time. Contrary to Great American's assertion, this is not a case where "Defendants have failed to identify any specific prejudice they would suffer in the event a stay … is not granted." (ECF No. 20 at 21 (citing *St. Paul Fire & Marine Ins. Co. v. Centex Homes*, No. ED CV 14-01216 AB (JCx), 2015 WL 13404108, at *3–4 (C.D. Cal. May 21, 2015) (declining to issue a stay where the moving party "present[ed] no evidence to suggest the risk of … prejudice [was] anything more than speculation" and "fail[ed] to identify any specific factual overlap" between the underlying action and the declaratory judgment

action)).) As discussed above, litigating these issues prior to the resolution of the Underlying Lawsuit would prejudice Defendants because most of the coverage issues implicate significant factual overlaps with the *Doe* Action and Defendants could be forced to take conflicting positions in the two actions.[7] Moreover, "[c]ourts have found that any prejudice (if at all) to the insurer in having to pay defense costs while the underlying case is pending is outweighed by prejudice to the insured in having to fight a 'two-front war.'" *Zurich Am. Ins. Co.*, 2019 WL 570760, at *6 (collecting cases). Defendants have demonstrated that they would be harmed absent a full stay of this action.

The Court accordingly finds the second *Landis* factor weighs in favor of a stay.

### 3. *Landis* Factor Three: Orderly Administration of Justice

Defendants contend that staying this action would promote the orderly administration of justice by allowing for factual disputes to be clarified in the *Doe* Action and avoiding the risk of making rulings that are inconsistent or conflict with the state court's findings in the *Doe* Action. (*See* ECF No. 17-1 at 28–29.)

Great American contends that a determination of the limited coverage issues it proposes would serve the orderly administration of justice by "allow[ing] an efficient resolution of dispositive issues" and "avoiding a situation where the parties will eventually be required to litigate all issues impacting coverage as well as reimbursement action[s]" for defense costs and potential indemnity costs. (ECF No. 20 at 21.) Great American also contends that a coverage determination "may facilitate settlement of the Underlying Lawsuit." *Id.*

When analyzing the third *Landis* factor, courts assess "whether granting a stay would result in 'simplifying or complicating … issues, proof, and questions of law.'" *Amguard Ins. Co. v. Optima Funeral Home, Inc.*, No. CV 22-4179-MWF (JCx), 2022 WL 18142556,

---

[7] To the extent certain coverage issues do not involve factual overlaps with the *Doe* Action, the Court is nevertheless disinclined to engage in piecemeal consideration of these limited issues for the reasons articulated above.

at *7 (C.D. Cal. Nov. 29, 2022); *see CMAX, Inc.*, 300 F.2d at 268. Courts are persuaded that the orderly administration of justice weighs in favor of granting a stay where "a stay [would] simplify the issues, avoid duplicative litigation, and prevent inconsistent findings." *Wang v. Abbott Lab'ys*, No. 22-cv-1224-MMA (MMD), 2022 WL 16951658, at *6 (S.D. Cal. Nov. 15, 2022); *see Ohio Cas. Ins. Co.*, 2023 WL 9004987, at *8 (noting that courts also consider "whether the coverage dispute and the underlying action overlap factually or legally"); *MS Amlin Corp. Member, Ltd.*, 2020 WL 5966612, at *8.

For the reasons explained above, the Court finds that the coverage issues presented in this action and the issues in the *Doe* Action "sufficiently overlap such that staying this case increases judicial efficiency by giving the state court time to assess the same facts and similar law, which in turn simplifies the issues in this court." *U.S. Specialty Ins. Co. v. Bell Painting*, No. 3:22-cv-03787-WHO, 2023 WL 5725582, at *5 (N.D. Cal. Aug. 9, 2023); *see Zurich Am. Ins. Co.*, 2019 WL 570760, at *6 (determining that the "factual overlap" between the two actions favored a stay to "avoid[ ] potentially inconsistent rulings" and "promote judicial efficiency").

The Court finds the third *Landis* factor weighs in favor of a stay.

### B.   Great American's Indemnity Obligations

Defendants contend that a stay is further warranted because Great American's third cause of action, which seeks a declaration regarding its indemnity obligations to Dye and DeHaan, "is premature because the obligation to indemnify cannot be ascertained until the individual claims that are the bases for the finding of liability are determined." (ECF No. 17-1 at 30.)

Great American contends that "[t]he issue of indemnity can be decided now as a matter of law" based on the "limited coverage issues" discussed above. (ECF No. 20 at 22.)

Courts generally determine that issues concerning the duty to indemnify are not ripe until the insured has incurred liability. *See Wang*, 2022 WL 16951658, at *3 ("In the insurance context, 'the duty to indemnify can arise only after damages are fixed in their

amount.' Thus, within the insurance context, indemnification is ripe and no longer contingent when the dollar amount is fixed." (quoting *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (Cal. 2001))); *Travelers Prop. Cas. Co. of Am. v. HPS Mech., Inc.*, No. 23-cv-1018-RSH-VET, 2024 WL 2786047, at *4 (S.D. Cal. Feb. 8, 2024) (collecting cases and noting that "[n]umerous district courts within the Ninth Circuit have found that actions premised exclusively on the duty to indemnify [were not ripe] where damages in the underlying action had not yet been determined")

Great American cites no authority contravening this general principle. Instead, Great American contends that the case upon which Defendants rely in the Motion is distinguishable. (*See* ECF No. 20 at 22 (citing *Cont'l Cas. Co. v. Glob. Allies, LLC*, No. 2:11-cv-03237-MCE-KJN, 2012 WL 5289315, at *5 (E.D. Cal. Oct. 24, 2012)).) Defendants rely on *Continental Casualty Co.* to contend that the Court need not consider the indemnity issue now because Defendants could prevail in the Underlying Lawsuit, thereby "obviating the need for this Court's determination of [Great American's] duty to indemnify." (ECF No. 17-1 at 30 (quoting 2012 WL 5289315, at *5).) The Court acknowledges that, as Great American points out, *Continental Casualty Co.* concerned insurers that were not defending the insured in the underlying action, whereas Great American is defending Dye (but not DeHaan) in the *Doe* Action. *See Cont'l Cas. Co.*, 2012 WL 5289315, at *2. Nevertheless, the Court finds *Continental Casualty Co.*'s reasoning persuasive here, particularly in light of the general consensus that indemnity issues are not ripe until the insured has incurred liability. *See Wang*, 2022 WL 16951658, at *3; *Travelers Prop. Cas. Co. of Am.*, 2024 WL 2786047, at *4.

Finally, Great American contends that its indemnity obligations are ripe for consideration based on the aforementioned "limited coverage issues." (ECF No. 20 at 22.) As discussed above, these coverage issues do not, at this time, warrant exemption from a stay of this action. The Court accordingly rejects Great American's contention that its request for a declaration regarding its indemnity obligations is ripe for review or otherwise militates against a stay.

24-cv-609-WQH-MMP

**IV.    CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Stay (ECF No. 17) is granted.

IT IS FURTHER ORDERED that the parties shall file a joint status report as to the progress of the *Doe* Action on or before February 18, 2025, and every sixty (60) days thereafter until the stay is lifted. Any party may file a motion to lift the stay when the *Doe* Action is resolved or for other good cause. The Clerk of the Court shall administratively close this case; the case will be reopened when the stay is lifted, without prejudice to the rights of any party.

Dated:  October 17, 2024

Hon. William Q. Hayes
United States District Court

24-cv-609-WQH-MMP